IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TODD JOHNSON,

                 Plaintiff,              OPINION AND ORDER

    v.

                                        23-cv-502-wmc

MADISON METROPOLITAN
SCHOOL DISTRICT,

                 Defendant.

---

    Representing himself, plaintiff Todd Johnson filed this lawsuit claiming defendant Madison Metropolitan School District ("MMSD") wrongfully terminated his employment as an assistant special education teacher for refusing to comply with a then-mandatory COVID-19 vaccine requirement on religious grounds in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).  (Dkt. #1, at 3.)  After MMSD stipulated to liability shortly before trial, a jury returned a verdict in favor of plaintiff on damages, specifically finding that:  (1) plaintiff had proven compensatory damages for pain and suffering arising out of his wrongful termination in the amount of $5,500.00; and (2) defendant had not proven that plaintiff failed to take reasonable actions to mitigate his damages.  (Dkt. #45.)  The purpose of this order is to award equitable relief in the form of back pay for lost wages and benefits from the time that plaintiff was terminated on or about January 24, 2022, through the date of judgment on May 12, 2025, including prejudgment interest.  42 U.S.C. § 2000e-5(g).

    In a separate evidentiary hearing to the bench during trial, plaintiff made an initial attempt to calculate a back pay award that includes a breakdown of wages and benefits by category.  (Dkt. #38.)  However, he presented only one pay stub in support of his request for back pay (Tr. at 7:7-8, 12:15-16; Ex. 10), and was unable to explain with specificity during his

testimony how he reached his calculations. Plaintiff has filed a post-trial motion for judgment awarding him lost wages and benefits (dkt. #47), and he also requests leave to supplement the record with a revised calculation of his estimated lost wages and benefits, although he provides no further documentary support. (Dkt. #48, #49.) At the court's request, defendant has also submitted its own accounting of the wages and benefits that plaintiff is due, while arguing that plaintiff is not entitled to back pay for a two-year period of time that he was enrolled in college and failed to mitigate his losses. (Dkt. #51.) Plaintiff objects to defendant's attempt to exclude lost wages while he attended college, and moves for sanctions. (Dkt. #52.) After considering all of the parties' submissions, the court will grant plaintiff's motion for leave to supplement and his motion for judgment, in part, and will award equitable relief as set forth below. However, because plaintiff does not demonstrate that sanctions are warranted, that motion will be denied.

OPINION

Under Title VII, after an employer has been found to have intentionally engaged in an unlawful employment practice, the district court may order back pay, reinstatement, and "any other equitable relief as the court deems appropriate."[1] 42 U.S.C. § 2000e-5(g)(1). Back pay represents the wages that plaintiff would have earned had he not been terminated between the date he was discharged and the date of judgment. 7th Cir. Pattern Civil Jury Instr. 3.11 (2017). The purpose of back pay is to put the plaintiff in the same position he would have been in if

---

[1] If reinstatement is inappropriate, a court can award front pay to compensate him for earnings he could have received for a reasonable period of time until he should have found comparable employment using reasonable diligence. *Williams v. Pharmacia*, 137 F.3d 944, 952-53 (7th Cir. 1998). Plaintiff does not seek reinstatement or front pay in this case, so the court does not address these issues.

2

the wrongful termination had not occurred. *Harper v. Godfrey, Co.*, 45 F.3d 143, 149 (7th Cir. 1995). A district court has "broad equitable discretion to fashion back pay awards to make the Title VII victim whole." *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003).

I. **Plaintiff's Request for Equitable Relief**

Here, plaintiff seeks an award of back pay for lost wages and benefits, including lost retirement contributions, lost and previously earned "PI Time" (which refers to personal leave), lost holiday pay, and lost coverage for health, dental, and life insurance. (Dkt. ##38, 49.) All told, plaintiff estimates that he is entitled to a total award of $177,498.68. (Dkt. ##47, at 1, 49, at 1.) At trial, defendant presented plaintiff's paystubs for the 2021-2022 school year. (Ex. 509.) Defendant has also provided a chart based on school-year salary schedules, benefit payments, and retirement contributions under the Wisconsin Retirement System rates for the period of time following plaintiff's termination on January 24, 2022, through the date that judgment was entered on May 12, 2025. (Dkt. #51-1.) Accordingly, defendant contends that plaintiff is entitled to, at most, $133,071.27, and that he should receive far less than that because he failed to mitigate his damages.[2] (Dkt. #51, at 7; Dkt. #51-1, at 1.) The court briefly addresses defendant's argument on mitigation before turning to the amount of back pay that he is entitled to receive.

A. **Failure to Mitigate Damages**

Defendant argues that the amount of back pay plaintiff receives should be reduced

---

[2] There is a minor inconsistency with the calculated amount according to defendant's chart (dkt. #51-1) and the total of $133,071.27 referenced in defendant's accompanying brief (dkt. #51, at 7), which appears to be a typographical error. Accordingly. when calculating the total award, the court has relied upon the amount of wages, benefits, and interest payments depicted in defendant's chart (dkt. #51-1).

3

because he was enrolled in college between September 1, 2022, through May 31, 2024, and failed to mitigate his damages by excluding himself from the job market. (Dkt. #51, at 2-6.) Generally, "a discharged employee must mitigate damages by using reasonable diligence in finding other suitable employment." *Graefenhain v. Pabst Brewing Co.*, 807 F.2d 1198, 1202 (7th Cir. 1989) (internal quotation marks and emphasis omitted). In this case, however, the jury found that defendant did *not* prove plaintiff failed to mitigate his damages. (Dkt. #45) (finding that defendant did not "prove that plaintiff failed to take reasonable actions to limit or reduce his damage"). Moreover, this finding was consistent with evidence showing plaintiff had continued to work a second job while employed by the MMSD, a job he kept while also going to school. Regardless, defendant failed to meet its burden of proof, and no reduction in the amount of back pay is warranted for the time that plaintiff was also enrolled in college.

Similarly, defendant re-asserts its argument that plaintiff failed to mitigate damages and that any back pay award should be cut off as of April 2022, when an unconditional offer of reinstatement was made. (Dkt. #51, at 7.) As defendant concedes, however, this argument was also rejected by the jury. (*Id.*) Although plaintiff argues that defendant should be sanctioned for repeating this argument after its rejection (dkt. #52), defendant explicitedly stated that it only resubmits this position to "preserve it for appeal." (Dkt. #51, at 7.) Accordingly, plaintiff's motion for sanctions will be denied.

**B. Back Pay**

As noted above, defendant stipulated that it was liable for wrongfully terminating plaintiff after he failed to comply for religious reasons with its then-mandatory COVID-19 vaccine requirement for school district employees. Once an employer has been found to have

engaged in an unlawful employment practice, there is a presumption that the employee is entitled to an award of back pay. *David*, 324 F.3d at 865. The burden of establishing entitlement to back pay first falls to the plaintiff. *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994); 7th Cir. Pattern Jury Instr. 3.11 (2017) ("If you find that Plaintiff has proven his claim of [discrimination] by a preponderance of the evidence, you may award him as damages any lost wages and benefits he would have received from the Defendant."). "Once a plaintiff has established the amount of damages [he] claims resulted from [his] employer's conduct, the burden of going forward shifts to the defendant to show that . . . damages were in fact less than the plaintiff asserts." *Hutchison*, 42 F.3d at 1044.

The evidence shows that plaintiff was an hourly employee who worked for defendant during the school year, which consisted of a fall and spring semester. Plaintiff reported working 32.5 hours per week, averaging 6.5 hours per day. (Dkt. #49-1; Dkt. #51-1.) Thus, plaintiff is seeking $120,298.00 in lost wages. (Dkt. #49.) However, at this court's request, defendant has provided an accounting of the amount of wages plaintiff would have earned at the applicable rate of hourly pay, which increased several times, for the following periods of time:

- January 24, 2022 through June 9, 2022: 92 days/598 hours at $18.56 per hour for a total of $11,099.00.

- September 1, 2022 through October 1, 2022: 20 days/130 hours at $19.12 per hour for a total of $2,485.60.

- October 2, 2022 through December 31, 2022: 55 days/357.5 hours at $24.12 per hour for a total of $8,622.90.

- January 1, 2023 through June 8, 2023: 104 days/676 hours at $24.12 per hour for a total of $16,305.12.

- August 28, 2023 through December 31, 2023: 74 days/481 hours at $26.20 per hour for a total of $12,602.20.

- January 1, 2024 through June 6, 2024: 106 days/689 hours at $26.20 per

- hour for a total of $18,051.80.

- September 3, 2024 through December 31, 2024: 76 days/494 hours at $27.27 per hour for a total of $13,471.38.

- January 1, 2025 through May 12, 2025: 106 days/682.5 hours at $27.27 per hour for a total of $18,611.78.

(Dkt. #51-1, at 1.)

Although offered an opportunity to do so, plaintiff has not offered a specific objection to or come forward with any documentation correcting defendant's calculations. Based on these calculations, the total amount of wages lost from plaintiff's termination on January 24, 2022, through the date of the jury verdict on May 12, 2025, is $101,249.78. Because plaintiff is presumptively entitled to an award of back pay, the court concludes that he is entitled to lost wages in that amount.

### C. Lost Benefits

As part of a back-pay award, plaintiff is also entitled to any "benefits [he] would have received from the Defendant if he had not been [terminated]." 7th Cir. Pattern Civil Jury Instr. 3.11 (2017); *see also Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847-48 (2001) (holding that back pay includes lost benefits). Plaintiff seeks lost benefits for retirement contributions, personal leave, holiday pay, and insurance coverage.

#### 1. Retirement Contributions

Plaintiff contends that he is entitled to a total of $5,887.81 in lost retirement contributions from his former employer. (Dkt. #49-1, at 1.) Defendant calculates that plaintiff accumulated benefits under the Wisconsin Retirement System for the time period at issue in the amount of $6,877.80. (Dkt. #51-1, at 1.) Because plaintiff does not contest

6

defendant's higher calculation, the court adopts that amount in retirement contributions as part of his back pay award.

### 2. Personal Leave

Plaintiff also seeks $5,533.55 in lost personal leave and $7,659.00 in previously earned or accrued leave benefits. (Dkt. #49-2.) Here, defendant calculates that plaintiff is entitled to back pay for lost personal leave in the amount of $5,060.96. (Dkt. #51-1, at 1.) Defendant separately determines that plaintiff is entitled to a lump sum payment of $7,859.42 for previously accrued leave at the time of his termination. (*Id*.) Again, plaintiff has not raised a specific objection to defendant's calculation or shown that he is entitled to a greater amount. Accordingly, the court finds that plaintiff is entitled to $5,060.96 for lost personal leave as part of his back pay award and a lump sum payment for previously accrued leave in the amount of $7,859.42.

### 3. Holiday Pay

Plaintiff contends that he is entitled to $5,842.00 in holiday pay. (Dkt. #49, at 1.) Defendant calculates that plaintiff is actually entitled to lost holiday pay in the slightly lower amount of $5,483.96. (Dkt. #51-1, at 1.) Despite an opportunity to do so, plaintiff has also not objected to defendant's calculation or presented documentation in support of his request for a greater amount. Accordingly, the court concludes that plaintiff is entitled to this sum for holiday pay as part of his back pay award.

### 4. Insurance Costs

Plaintiff argues that he is entitled to $27,800.50 for lost health insurance coverage, $4,370.50 in lost dental insurance coverage, and $107.32 in lost life insurance coverage. (Dkt.

7

#49-2.) Defendant has provided information about the insurance premiums it would have paid based on bi-weekly pay periods, but argues that plaintiff is not entitled to these "non-wage" benefits as part of his back pay award. (Dkt. #51, at 2.) The court agrees.

To recover benefits for lost insurance coverage, a plaintiff must show that he either incurred expenses in securing alternative insurance coverage *or* incurred medical expenses that would have been covered under the employer's insurance program. *Runkel v. City of Springfield*, No. 18-cv-3206, 2024 WL 2303726, at *5 (C.D. Ill. May 21, 2024) (citing *Kossman v. Calumet Cnty.*, 800 F.2d 697, 703-04 (7th Cir. 1986), *overruled on other grounds*, *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988)). Plaintiff has not made either showing. Indeed, plaintiff testified that he did not attempt to secure alternative coverage and failed to seek medical care for a pre-existing eye condition following his termination due to the lack of coverage, something the jury considered in its damages award for pain and suffering.

Accordingly, the court will include no cost for lost insurance coverage in the award of back pay. *See Chapin v. Fort-Rohr Motors, Inc.*, No. 1:06-cv-34, 2009 WL 89658, at *5 (N.D. Ind. Jan. 13, 2009) (denying recovery for lost insurance coverage in the calculation of plaintiff's back pay award, absent a showing that he either incurred expenses in securing alternative insurance coverage or incurred medical expenses that would have been covered by his employer's insurance program); *U.S. EEOC v. Custom Cos., Inc.*, No. 02 C 3768, 03 C 2293, 2007 WL 734395, at *14 (N.D. Ill. March 8, 2007) (same).

D. **Prejudgment Interest and Additional Interest**

Prejudgment interest on back pay is awarded to compensate plaintiffs for the loss of the use of money. *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 274 (7th Cir. 1993).

"[P]rejudgment interest typically accrues from the date of the loss or from the date that the claim accrued." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003). There is no statutory rate for prejudgment interest. *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998). Although determining the applicable rate is left to the court's discretion, "the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question." *Id*.

Defendant's calculation of "Total Wage Cost" for lost pay and benefits for purposes of back pay is $118,677.51.[3] (Dkt. #51-1, at1.) Based on this figure, defendant calculates the amount of prejudgment interest on these lost wages and benefits as $5,586.33 under the prevailing interest rate at the time the wages and benefits would have been earned. (*Id*.) Since plaintiff does not object to defendant's calculation amount nor offers another calculation, the court concludes that plaintiff is entitled to prejudgment interest on the back pay award in this amount.

Further, defendant separately calculates that plaintiff is entitled to an additional $947.85 in interest on the $7,859.42 lump sum he is due for the accrued personal leave he had at the time of his termination. (Dkt. #51-1, at 1.) Without objection, plaintiff is entitled to $947.85 in additional interest on the lump sum payment for his previously accrued leave.

---

[3] There is a minor discrepancy between the "Total Wage Cost" calculated by defendant ($118,677.51) and the total amount of lost wages, retirement contributions, personal leave, and holiday pay set forth above ($101,248.78 + $6,877.80 + $5,060.96 + $5,483.96 = $118,672.50). To the extent that the difference in the amounts favors plaintiff, the court will accept the Total Wage Cost as the amount subject to prejudgment interest.

**II. Total Award**

Based on the foregoing, the court concludes that plaintiff is entitled to $118,677.51 in lost wages and benefits, with prejudgment interest in the amount of $5,586.33. Plaintiff is also separately entitled to a lump sum payment for accrued personal leave at the time of his termination in the amount of $7,859.42, with additional interest in the amount of $947.85. Including the jury award of $5,500.00 in compensatory damages for pain and suffering, this brings his total judgment to $138,571.11.

ORDER

IT IS ORDERED that:

1. Plaintiff Todd Johnson's motion for judgment awarding him lost wages and benefits (dkt. #47) is GRANTED, as set forth above.

2. Plaintiff's motion to supplement the record (dkt. #48) is GRANTED.

3. Plaintiff's motion for sanctions (dkt. #51) is DENIED.

4. Within thirty days of the date of this order, defendant Madison Metropolitan School District shall remit and pay $138,571.11 to plaintiff.

5. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 27th day of June, 2025.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge